UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUESTAR GENOMICS,<br><br>    Plaintiff,<br><br>v.<br><br>CHUNXIAO SONG, et al.,<br><br>    Defendants. | Case No. 21-cv-04507-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: ECF No. 119 |

Before the Court is Defendant Dr. Chunxiao Song's motion for judgment on the pleadings and motion to stay. ECF No. 119. The Court will grant the motion as to Plaintiff Bluestar Genomics' ("Bluestar") conversion claim; deny the motion in all other respects; and deny the motion to stay as moot.

**I.  BACKGROUND**

The Court's prior order on Defendants' motion to dismiss provides a comprehensive factual and procedural background of this case. ECF No. 100. Here, the Court briefly summarizes the relevant facts for the purposes of resolving the instant motion.

Bluestar and Dr. Song executed a contract for consulting services on October 1, 2016 ("Consulting Agreement"). On June 11, 2021, Bluestar brought claims against Dr. Song and the Ludwig Institute for Cancer Research ("Ludwig") based on Dr. Song's breach of the Consulting Agreement. ECF Nos. 1, 1-9. After Bluestar and Ludwig moved to dismiss the claims for lack of personal jurisdiction, ECF No. 34, the Court dismissed the claims as to Ludwig but found that Dr. Song was subject to personal jurisdiction. ECF No. 100.

This dispute arises out of Dr. Song's alleged breach of the Consulting Agreement. ECF No. 130 at 7. Under the Consulting Agreement, Dr. Song agreed to provide up to 40 hours of

work per month to Bluestar in exchange for equity in the founding of Bluestar, and at least $5,000 per month in cash compensation. ECF No. 81 ¶ 29. Dr. Song also agreed to assign to Bluestar:

> all right, title and interest in and to any work product created by [Dr. Song], or to which [Dr. Song] contributes, pursuant to this agreement (the "Work Product"), including all copyrights, trademarks and other intellectual property rights contained therein.

ECF No. 81-9 at 2; *see also* ECF No. 81 ¶ 26. Dr. Song does not dispute the terms of the Consulting Agreement, that he entered into the Consulting Agreement, or that Ludwig was not a party to the Consulting Agreement.

While the Consulting Agreement was operative, Dr. Song developed two technologies that facilitate the detection of cancer: the 5mC technology[1] and the TAPS technique.[2] ECF No. 81 ¶¶ 43, 48. Ludwig filed a patent application for the 5mc technology on or about September 11, 2018, and the patent was issued July 16, 2020 (U.S. Patent Publication 2020/0224190). *Id.* ¶ 42. Dr. Song sought patent protection—i.e., two provisional unpublished patent applications—for the TAPS technique on or about January 2018. *Id.* ¶ 47; ECF No. 130 at 20. The public patent filings related to this work "first began publishing in the 2019 time frame," and ultimately issued November 26, 2020 (U.S. Patent Publication 2020/0370114). ECF No. 81 ¶ 47.

Defendant Dr. Song brings this motion for judgment on the pleadings alleging that Ludwig is a necessary or indispensable party because Ludwig is "the ultimate assignee of the 5mc and TAPS technologies," and a decision on the merits in this case will impact Ludwig's rights. ECF No. 119 at 6; ECF No. 132 at 2. Dr. Song also seeks to dismiss Bluestar's claim for conversion as barred by the statute of limitations. ECF No. 119 at 22.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

---

[1] Labeling a modified form of cytosine called 5-methylcytosine ("5mC") in cell-free DNA via sequencing. ECF No. 100 at 2.

[2] Also known as "TET assisted pyridine borane sequencing," a method for identifying 5mC and 5hmC by combining TET oxidation and reduction by borane derivatives. ECF No. 100 at 2.

### III. LEGAL STANDARD

#### A. Motion for Judgment on the Pleadings

The Ninth Circuit has explained the relevant standard as follows:

> Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party. As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.

*Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citations omitted); *see also Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). The analysis under Rule 12(c) for a motion for judgment on the pleadings is "functionally identical" to the analysis under Rule 12(b)(6) for a motion to dismiss. *Gregg v. Hawaii, Dep't of Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017) (internal citations omitted). "A defense of failure to join a party indispensable under Rule 19 . . . may be made . . . by motion for judgment on the pleadings." Fed. R. Civ. P. 12(h)(2).

#### B. Joinder of Absent Party

Federal Rule of Civil Procedure 19 imposes a three-step inquiry to determine whether dismissal for failure to join a necessary and indispensable party is appropriate: (1) whether the absent party is necessary; (2) whether it is feasible to order that the absent party be joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party. *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing Fed. R. Civ. P. 19).

The Court must first evaluate whether the absent party is necessary under Rule 19(a). A party is only necessary if: (A) in that party's absence, the court cannot accord complete relief; or (B) the party claims "an interest relating to the subject of the action" and is situated such that disposing of the action may (i) impair or impede that party's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring inconsistent obligations. Fed. R. Civ. P. 19(a). "There is no precise formula for determining whether a particular non-party should be joined under Rule 19(a). The determination is heavily influenced by the facts and circumstances of the case." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir.

2010).

Only if the court determines that a party is a required party does it proceed to the second inquiry: whether joinder is feasible. *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013).

## IV. DISCUSSION

Dr. Song argues that the Court should grant judgment on the pleadings because Bluestar's claim of conversion is time barred, and because Ludwig is a necessary and indispensable party to this action.

### A. Bluestar's Conversion Claim is Barred by the Statute of Limitations

The statute of limitations for a claim of conversion in California is three years. Cal. Code Civ. Proc. § 338(c)(1). The statute does not begin to run until all essential elements of the cause of action have occurred. *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009) ("*Bd. of Trs. of Leland Stanford*"). In particular, the clock does not run until the plaintiff is on notice of an interference with his ownership or right of possession of the property in question. *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 610 (1981); *Google LLC v. Sonos, Inc.*, No. 20-cv-06754-WHA, 2022 WL 195850, at *2 (N.D. Cal. Jan. 21, 2022). Notice may be actual or constructive (e.g., upon the "issuance of a patent and recordation in the Patent Office constitute notice to the world of its existence"). *Motha v. Time Warner Cable Inc.*, No. 16-cv-03585-HSG, 2016 WL 7034039, at *2 (N.D. Cal. Dec. 2, 2016); *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1529 (Cal. Ct. App. 2006); *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936).

Determining when the statute of limitations for conversion begins to run turns on when Dr. Song actually allegedly interfered with Bluestar's alleged right of possession. *Del E. Webb Corp.*, 123 Cal. App. 3d at 610; *see also Cellulose Material Sols., LLC v. SC Mktg. Grp., Inc.*, No. 22-cv-03141-LB, 2023 WL 6930388, at *2 (N.D. Cal. Oct. 18, 2023). Dr. Song argues that as of February 2018, Bluestar had actual notice of interference because it was negotiating a license with Ludwig, and Bluestar therefore knew that there were competing claims to ownership of the 5mc and TAPS technologies. ECF No. 119 at 22; *see also* ECF No. 81 ¶ 65 ("To amicably confirm rights to the TAPS technique and the Ludwig patent application (the 5mc technology), Bluestar

4

attempted to license those rights from Ludwig, which was actively interested in licensing those rights.  In February 2018, Ludwig and Bluestar started the negotiations of licensing the TAPS and 5mc techniques, including the patent rights, know-hows, trade secrets and other confidential technological information.")  Dr. Song also argues that Bluestar had constructive notice of interference from the provisional patent applications filed in January and April 2018.  ECF No. 132 at 10.  Thus, Dr. Song claims, because Bluestar had notice of interference sometime in January to April 2018, the three-year period expired before Bluestar filed this action.  *Id.* at 10–11 (citing *Bd. of Trs. of Leland Stanford*, 583 F.3d at 847).

Bluestar responds that in June 2018 (three years prior to the filing of this lawsuit), "none of the disputed patents had published much less issued and the Ludwig patent application had not yet been filed."  ECF No. 130 at 20.  It responds further that "determining what a party discovered or could have discovered exercising reasonable diligence is a 'quintessential question of fact that cannot be resolved at the motion to dismiss stage'" and that there are open questions of fact pertaining to "the nature and extent of Bluestar's awareness" of patent ownership prior to patent issuance.  *Id.* (citing *Regents of Univ. of California v. Chen*, No. 16-cv-07396-EMC, 2017 WL 3215356 at *6 (N.D. Cal. July 26, 2017)).

Dr. Song's argument based on the provisional patent applications is unavailing.  This case was originally filed on June 11, 2021.  ECF No. 119 at 22.  The patent applications for the disputed patents were filed and published on or after September 2018, and the patents ultimately issued sometime in 2020.  ECF No. 119 at 8.  The Court agrees with Bluestar that Dr. Song "cites no case to support the proposition that an unpublished provisional application [such as the TAPS technique provisional application filed in January 2018] begins the statute of limitations."  ECF No. 119 at 20.  Accordingly, Bluestar did not have constructive notice until the patent applications were published on or after September 2018.  ECF No. 119 at 8; ECF No. 130 at 20.

The Court finds, however, that Bluestar was on notice of the competing claims to ownership of the 5mc and TAPS technologies as of February 2018, when Bluestar acknowledges it was negotiating to obtain the rights to those technologies "*from Ludwig*."  ECF No. 81 ¶ 65.  Ludwig would not have been able to offer a license to this technology without simultaneously

5

asserting ownership of it. *Board of Trustees of Stanford* is instructive. In that case, the statute began to run on Roche's claim because "a Stanford employee [] conducted a slide presentation at Roche that asserted Stanford's ownership of the HIV RNA assay invention and offered Roche a license to all relevant patents." *Bd. of Trustees of Stanford*, 583 F.3d at 847. Similarly, here, Ludwig's offer of a license "put [Bluestar] on notice that [Ludwig] claimed ownership of [Song's] work . . . and that [Stanford] expected [Bluestar] to take a license to current and future patents." *Id.* Accordingly, Bluestar's complaint, filed more than three years later, was not timely.

### B.    Ludwig is Not a Necessary Party

Whether Ludwig is a necessary party to this action centers on three issues: (1) whether Ludwig has legally protectable interests in the claims before this Court; (2) whether complete relief can be accorded in Ludwig's absence; and (3) whether Dr. Song would be at risk of incurring inconsistent obligations if Ludwig were not joined. Fed. R. Civ. P. 19(a); *Salt River Project Agr. Imp. & Power Dist.*, 672 F.3d at 1179.

#### 1.    Ludwig Does Not Have Protected Interests

Dr. Song argues that "[p]roperty owners are generally necessary parties to actions that could affect their property interests adversely." ECF No. 119 at 12. He alleges that Bluestar's claims are "derived from its claims of ownership of the patent applications," and that the Court cannot resolve this issue without Ludwig's participation because "any such declaration would adversely affect Ludwig's interests as the apparent owner of the rights." *Id.* at 14–15. His argument relies on cases finding that a patent owner (or co-owner or assignee of record), like Ludwig, is a necessary party to any action that undermines their claim of ownership or otherwise impairs or impedes their ability to protect their rights and interests. *Id.* at 15; ECF No. 132 at 4–5.

Bluestar responds that all its claims arise out of the Consulting Agreement to which Ludwig was not a party. ECF No. 130 at 6. Bluestar contends that Dr. Song "does not, and cannot, cite any breach of contract case where an entity that was not party to the contract is deemed necessary." *Id.* at 13. They aver that "[s]uch a finding is contrary to common sense—a breach of contract dispute must be justiciable between the parties to the contract." *Id.* Instead, Bluestar argues that the asserted claims do not affect Ludwig's interests as the apparent owner and

the assignment provision grants Bluestar an "expectant interest" in the intellectual property, such that at the time of patent applications, "Bluestar was *entitled* to legal title." *Id.* at 12–13 (emphasis added) (citing *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 2009)).

The claims for breach of contract and breach of the implied covenant of good faith and fair dealing arise from Bluestar's interest in and right to title, but do not require the Court to decide questions of ownership or whether the assignment was valid. The Court briefly summarizes the standard for these claims under California law.

To allege breach of contract, a plaintiff must show "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-cv-03656-LHK, 2016 WL 3345464, at *11 (N.D. Cal. June 16, 2016) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

"[T]he authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 942 (N.D. Cal. 2015) (quoting *California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal. App. 3d 1, 54 (1985)). In order to make a claim for breach of the implied covenant, the plaintiff must show that defendant "fail[ed] or refuse[d] to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Id.* (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

Given the elements of the claims at issue, the Court can resolve Bluestar's claims without determining the ownership of the disputed patents. The cases cited by Dr. Song are inapposite and pertain to claims that would require a court to determine ownership, or where the Court's ruling would impact ownership— that is, cases involving patent or trademark infringement,[3] correcting

---

[3] *Golden Temple of Or., LLC v. Wai Lana Prods., LLC*, No. 09-cv-902-HZ, 2011 WL 6070385 (D. Or. Dec. 5, 2011); *Nestle USA, Inc. v. Best Foods LLC*, No. 21-cv-02659-MCS-JPR, 2021 WL 4538505 (C.D. Cal. Sept. 9, 2021).

7

inventorship,[4] breach of an ownership warranty,[5] or declaring a patent invalid or unenforceable.[6] ECF No. 119 at 13–15.

In particular, Dr. Song heavily relies on two cases—*A10 Networks, Inc. v. Brocade Communications Systems Inc.*, No. 5:11-cv-05493-LHK, 2012 WL 1932878 (N.D. Cal. May 29, 2012) and *Delano Farms Co. v. California Table Grape Commission*, 623 F. Supp. 2d 1144 (E.D. Cal. 2009), *aff'd*, 655 F.3d 1337 (Fed. Cir. 2011).

In *A10 Networks, Inc.*, A10 obtained the rights to a patent from Industrial Technology Research Institute ("ITRI"). 2012 WL 1932878, at *1. When A10 filed suit for alleged patent infringement, defendants argued that A10 lacked standing because ITRI retained the rights to sue for past infringement. *Id.* at *4. The court reviewed the agreement between ITRI and A10 and found that it did not include an assignment of the right to recover for past infringement. *Id.* at *5. Because A10 "acquired less than all substantial rights" and "ITRI retained the right to sue for past infringement," the court found that ITRI was a necessary party. *Id.* at *9. The court also found that failure to join ITRI could expose defendants to "the risk of incurring double, multiple, or otherwise inconsistent liability obligations." *Id.*

In *Delano Farms*, the United States Department of Agriculture ("USDA") owned the patents of certain grape varietals. 623 F. Supp. 2d at 1151–1152. The California Table Grape Commission ("Commission") was the exclusive licensee of these patents. *Id.* Plaintiffs were businesses engaged in growing, harvesting, and selling table grapes. *Id.* at 1149. They brought suit against the Commission asking the court to declare the patents invalid. *Id.* Citing to federal circuit precedent, the court first noted that a "patent owner is to be joined when fewer than all substantial rights have been transferred in an exclusive license to the licensee." *Id.* at 1159. The

---

[4] *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20 (D.D.C. 2014), *aff'd* 684 Fed. App'x 985 (Fed. Cir. 2017).

[5] *Braun v. Medtronic Sofamor Danek, Inc.*, No. 10-cv-1283, 2013 WL 1842290, at *5 (D. Utah May 1, 2013).

[6] *Cent. Tools, Inc. v. Mitutoyo Corp.*, 381 F. Supp. 2d 71 (D.R.I. 2005); *Devtech Mktg., Inc. v. Westfalia-Surge, Inc.*, No. 02-cv-672-RT, 2005 WL 6287929 (C.D. Cal. 2005); *Suprex Corp. v. Lee Sci., Inc.*, 660 F. Supp 89, 93 (W.D. Pa. 1987).

court then determined that "the USDA did not transfer all "substantial rights . . . specifically the right of assignment and the ability to bring enforcement actions," and that the Commission was "unauthorized to defend the declaratory suit seeking to invalidate the U.S. owned patents, without the joinder of the United States." *Id.* at 1159–1160.

Unlike the plaintiffs in *Delano*, Bluestar does not seek to invalidate a patent owned by Ludwig, and unlike the plaintiffs in *A10*, Bluestar is not claiming to own all rights to a patent in order to sue for past patent infringement. Stated differently, Bluestar's breach of contract claims do not require the Court to determine who owns, or has legal title to, the disputed patent. As Bluestar correctly points out, Dr. Song does not cite any breach of contract case where an entity that was not party to the contract is deemed necessary. ECF No. 130 at 13. The Court finds that Bluestar's claims do not undermine Ludwig's claim of ownership or otherwise impair or impede its ability to protect its rights and interests. The Court next turns to the question of whether damages would afford a complete remedy.

### 2. Complete Relief is Possible

Bluestar recognizes that some of the relief it requested in its complaint will no longer be possible: "including that Ludwig be ordered to reassign all rights and interest in the disputed patent applications, that Ludwig be enjoined from intentional interference with the Bluestar Contract, and that Ludwig pay damages for interference." ECF No. 130 at 6, 11. That leaves its request for damages for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 10–11 (citing Cal. Civ. Code § 3300 (West)). By now taking the position that "an award of damages could adequately compensate Bluestar," and as Bluestar confirmed during the motion hearing, Bluestar is abandoning its request for declaratory relief. Thus, a determination of patent ownership is no longer required.

The Court finds that it can afford complete relief to Bluestar through an award of damages.

### 3. There is No Risk of Inconsistent Obligations

Bluestar argues that when damages are awarded, Ludwig's "property interest and its contract with Dr. Song will be left intact" such that there is no risk of inconsistent obligations. ECF No. 130 at 12. Dr. Song does not address this point and therefore concedes it by his silence.

9

*Lou v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2022 WL 18539358, at *2 (N.D. Cal. Aug. 26, 2022) ("And yet Kelly offers no response to Honda's argument that he failed to plead an inadequate remedy at law.  As a result, he concedes that argument." (citation and footnote omitted)).

In sum, Bluestar's claims, as now framed, do not require the Court to resolve the question of patent ownership and thus do not adversely affect Ludwig's interests.  Furthermore, an award of damages would accord complete relief to Bluestar without creating a risk of inconsistent obligations for Dr. Song.  The Court concludes that Ludwig is not a necessary party.[7]

## CONCLUSION

For the foregoing reasons, the Court grants Dr. Song's motion for judgment on the pleadings as to Bluestar's conversion claim and denies the motion in all other respects.  The motion to stay is terminated as moot.

At the hearing, Bluestar agreed to file an amended complaint removing any request for declaratory relief or a determination of ownership rights.  *See Nestle USA, Inc. v. Best Foods LLC*, No. 21-cv-02659-MCS-JPR, 2021 WL 4538505, at *1 (C.D. Cal. Sept. 9, 2021).  The Court now orders it to do so by January 12, 2024.

**IT IS SO ORDERED.**

Dated:  December 21, 2023



JON S. TIGAR
United States District Judge

---

[7] Because the Court finds that Ludwig is not a necessary party, it does not reach whether joinder is feasible and whether the case can proceed without the absent party.

10