UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUESTAR GENOMICS,<br><br>    Plaintiff,<br><br>v.<br><br>CHUNXIAO SONG and LUDWIG INSTITUTE FOR CANCER RESEARCH, LTD.,<br><br>    Defendants. | Case No. 21-cv-04507-JST<br><br>**ORDER DENYING MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) AND MOTION TO STAY**<br><br>Re: ECF No. 105 |

Before the Court is Defendant Dr. Chunxiao Song's motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) and an order staying the action until the appeal is resolved. ECF No. 105. Plaintiff Bluestar Genomics ("Bluestar") opposes the motion. ECF No. 115. The Court will deny the motion.

## I.  BACKGROUND

As relevant to the present motion, the Court granted on March 25, 2022, Bluestar's request to conduct limited jurisdictional discovery and stayed its determination as to whether it can exercise personal jurisdiction over Defendant Dr. Song. ECF No. 59. After conducting limited jurisdictional discovery, Bluestar filed the First Amended Complaint ("FAC"). ECF No. 81. There, Bluestar asserts claims against Dr. Song for breach of a contract for consulting services between Dr. Song and Bluestar ("Consulting Agreement"), for breach of the implied covenant of good faith and fair dealing, and for conversion of the ownership rights to certain technologies that, according to Bluestar, Dr. Song was required to assign to Bluestar pursuant to the Consulting Agreement.

Dr. Song moved to dismiss those claims for lack of personal jurisdiction. Docket No. 83. In an order dated May 25, 2023, the Court concluded that Bluestar had shown that the Court can exercise specific personal jurisdiction over Dr. Song based on the three-part test set forth in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), pursuant to which (1) Bluestar was required to show that Dr. Song had purposefully availed himself of the privilege of conducting business in California (the forum); (2) Bluestar was required to show that its claims against Dr. Song arise out of or relate to Dr. Song's California contacts; and (3) Dr. Song was required to show that the exercise of specific personal jurisdiction over him by this Court would be unreasonable. *See* Order at 16-32, ECF No. 100.

As relevant here, the Court concluded that Bluestar met its burden under the first prong of the specific jurisdiction test to show that Dr. Song had purposefully availed himself of the privilege of conducting business in California. For ease of reference, the relevant excerpts of the May 25, 2023, order are the following:

> The purposeful availment test looks to whether there exists "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation and internal quotation marks omitted). "[W]here the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there[.]" *Id.* (internal citations omitted). The existence of a contract that will be performed by one of the parties in the forum state does not, on its own, "automatically establish sufficient minimum contacts in the other party's home forum[.]" *Id.* at 479. This is because a contract is only an intermediate step that connects prior negotiations with future consequences, which are the real object of a business transaction. *Id.* For that reason, where a defendant's contacts with the forum relate to a contract, courts consider factors that include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*
>
> [ . . . ]
>
> Bluestar also relies on *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir. 1987) ("*Palka*") to argue that Dr. Song purposefully availed himself of the benefits of conducting business in California. There, the Ninth Circuit relied on *Burger King* to conclude that a court in California could exercise personal jurisdiction over a defendant who intentionally contracted to

2

provide accounting services for a business in California. The defendant was a resident of Kansas at all relevant times. The plaintiff initially ran a medical practice in Kansas and hired the defendant to provide accounting services for the medical practice. The plaintiff later moved to California and established a new medical practice there, and the defendant continued to provide accounting services for the new medical practice in California. The defendant "performed most of the accounting services while at home in Kansas but traveled to California to work in [the plaintiff's] offices for seven to ten days during each June from 1981 to 1983, and in August 1983 he returned to California to work on [the plaintiff's] tax audit." *Id.* at 312. The plaintiff sued the defendant in California for breach of contract, negligence, and for an order declaring that the plaintiff did not owe the defendant certain retirement benefits. The Ninth Circuit held that the California court could exercise personal jurisdiction over the Kansas defendant, reasoning that, "[b]y contracting to provide personal services after [the plaintiff] reincorporated in California, [the defendant] deliberately created 'continuing obligations' between himself and residents of the forum . . . [and] manifestly has availed himself of the privilege of conducting business there[.]" *Id.* at 314 (quoting *Burger King*, 471 U.S. at 476). The Ninth Circuit held that the defendant's limited physical presence in California did not preclude a finding of purposeful availment because the defendant had "'purposefully interjected' himself into California affairs by choosing to maintain an employer-employee relationship with a California-based corporation," *id.* at 315, and because he had intentionally decided to provide "ongoing . . . accounting services for a California enterprise" and to "benefit from the contractual relationship" even after the plaintiff moved to California, *id.* at 314.

*Palka* supports a finding of purposeful availment here because Dr. Song intentionally contracted to provide "ongoing" consulting services for a California corporation with no definite end date. As noted, the Consulting Agreement was amended in August 2018 to provide that it would continue indefinitely until terminated by either party. The August 2018 amendment indicates that Dr. Song intended to provide consulting services to, and to benefit from the contractual relationship with, a California resident on a long-term basis. The Consulting Agreement remained in effect for approximately 2.5 years, which is a similar duration to the contractual relationship in *Palka*, which lasted from 1981 to 1984. *See id.* at 314.

Dr. Song argues that *Palka* is distinguishable because the services that the defendant provided to the plaintiff there were full-time services that resulted in an employer-employee relationship, whereas the Consulting Agreement established an independent-contractor relationship for part-time consulting services. Dr. Song also argues that his visits to Bluestar in California were fewer and shorter than those of the defendant in *Palka*. Dr. Song visited Bluestar's offices in California twice, with each visit lasting two days; the defendant in *Palka* visited the plaintiff's offices in California a total of four times, with some of those visits lasting seven to ten days. *See id.* at 312.

3

Dr. Song's arguments are not persuasive. The Ninth Circuit's holding in *Palka* appears to have been driven primarily by the fact that the defendant intentionally decided to contract for the purpose of providing "ongoing" services to a California resident and benefitting from that relationship. There is no dispute here that Dr. Song intentionally contracted to provide "ongoing" consulting services to Bluestar and benefitted financially from the Consulting Agreement for multiple years. Thus, the primary basis for the finding of purposeful availment in *Palka* is present here also. It is true, as Dr. Song points out, that the facts here are not on all fours with *Palka* because the Consulting Agreement did not create an employer-employee relationship that required periodic travel to California of seven to ten days at a time, as the contract in *Palka* did. But these differences do not alter the Court's finding of purposeful availment (1) because the Ninth Circuit expressly noted in *Palka* that even an absence of physical presence in California would not preclude a finding of purposeful availment, *see id.* at 314, and (2) because Dr. Song created other connections with California that the defendant in *Palka* did not. It is undisputed that Dr. Song received all payments from Bluestar pursuant to the Consulting Agreement in a bank account he set up in California. *See* Song Dep. Tr. at 80. Further, the Consulting Agreement provides that it is governed by California law. When considered in conjunction with Dr. Song's intentional decision to contract to provide "ongoing" consulting services to Bluestar with no definite end date, Dr. Song's use of his California bank account to conduct business with a California resident and his acceptance of a California choice-of-law provision support a finding that Dr. Song purposefully established an affiliation with California and availed himself of the privilege of conducting business here.

Dr. Song argues that he negotiated the Consulting Agreement when he was residing in the United Kingdom and that this counsels against finding purposeful availment. However, under *Palka*, the location of the negotiations does not appear to be material. In *Palka*, the Kansas defendant was residing in Kansas at all relevant times, presumably including when the contract at issue was negotiated, and the Ninth Circuit still found purposeful availment.

Dr. Song relies on *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015), to argue that a finding of purposeful availment is not warranted. That case is distinguishable.

In *Picot*, a California plaintiff entered into an oral contract with a Michigan defendant pursuant to which the defendant was to help develop and market certain technology in exchange for a share of any profits from the sale of the technology, $20,000 per month, and reimbursement of his expenses. *Id.* The agreement was allegedly formed in Michigan and was performed by the defendant in Michigan and by the plaintiff in California. The defendant traveled to California twice pursuant to the contract and was reimbursed by the plaintiff for those trips. The plaintiff eventually entered into a contract to sell the technology to a third party. When the plaintiff refused to pay the defendant his purported share of the proceeds from the third-party contract, the defendant

4

threatened the third-party purchaser with a lawsuit, and the contract to sell the technology to the third party fell through. The plaintiff sued the Michigan defendant in California for a declaration that no oral agreement between him and the defendant ever existed and for intentional interference with the sales contract with the third party. In the context of the contract claim, the Ninth Circuit concluded that the "oral agreement and [the defendant's] two trips to California did not create sufficient minimum contacts to subject him to personal jurisdiction there." *Id.* at 1213. It reasoned that, given "the limited nature of the transaction at issue," the defendant's two trips to California were insufficient to establish the requisite minimum contacts with California because the trips were not "envisioned in the initial oral agreement" and instead "grew incidentally out of broader efforts to develop and market the technology." *Id.* The Ninth Circuit also reasoned that the trips held "no special place in [the defendant's] performance under the agreement as a whole," given that the defendant also traveled to other locations pursuant to the contract and that "the bulk" of the defendant's efforts in connection with the alleged agreement "were centered in Michigan." *Id.*

Here, Dr. Song established more connections with California than the defendant in *Picot* did. In *Picot*, the defendant's two trips to California were his only contacts with the state. By contrast, Dr. Song, in addition to visiting Bluestar's offices in California twice, accepted all payments from Bluestar pursuant to the Consulting Agreement in the bank account he set up in California, and he agreed to a California choice-of-law provision. *Picot* is distinguishable for the additional reason that the Ninth Circuit considered the defendant's contacts with California in the context of "the limited nature of the transaction" between the California plaintiff and the Michigan defendant, which was to end when the technology was sold to a third party. *Id.* at 1213 (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). Here, as discussed above, the parties amended the Consulting Agreement in August 2018 to allow the agreement to continue in effect indefinitely unless terminated by either party. Thus, the contract here did not involve a "limited" transaction with a definite end point, but rather created "ongoing obligations" to a California resident with no definite end date. *Cf. Boschetto*, 539 F.3d at 1017 (finding that a contract for the sale of a car was insufficient to create a substantial connection with California because it "did not create any ongoing obligations [with the plaintiff] in California," as "once the car was sold the parties were to go their separate ways").

Dr. Song's remaining argument is that the actions that he took to establish contacts with California (e.g., accepting business payments in a bank account he set up in California, entering into an agreement that contains a California choice-of-law provision, sending emails and making phone calls to Bluestar employees in California) are not, when considered individually, sufficient to find purposeful availment. But what drives the Court's finding here is the totality of Dr. Song's contacts with California. When considered together, as discussed above, his contacts are sufficient to find purposeful availment.

5

Accordingly, the first prong of the specific jurisdiction test is met. Order at 17-22, ECF No. 100.

The Court concluded that Bluestar met its burden under the second prong of the specific jurisdiction test to show that its claims against Dr. Song "arise out of or relate to" Dr. Song's contacts with California; in doing so, it relied on three cases that are relevant to Dr. Song's present motion:

> To determine whether a plaintiff satisfies the second prong of the three-part specific jurisdiction test, a court must examine whether the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (citation omitted).
>
> In *Palka*, the case discussed above involving a contract for accounting services, the Ninth Circuit held that the second prong of the specific jurisdiction test was satisfied because the claim for breach of contract that the California plaintiff asserted against the Kansas defendant arose out of the defendant's alleged failure to fully perform his duties as an accountant and, as such, arose "directly out of [the defendant's] forum contacts with California via his employment relationship with [the California plaintiff]." *See* 823 F.2d at 315. In so holding, the Ninth Circuit did not inquire into the location of the alleged breach of the contract. Instead, in finding the requisite nexus, the Ninth Circuit relied on the claim's relationship to the contractual relationship as a whole and the contacts that the defendant had established with California by virtue of that contractual relationship. *Id.* at 314-15.
>
> Bluestar's claims against Dr. Song arise out of an alleged breach of the Consulting Agreement and, as such, they arise out of or relate to Dr. Song's contacts with California via his contractual relationship with Bluestar in California. Bluestar's claims are, therefore, related under *Palka* to the California contacts that Dr. Song established with California pursuant to that relationship. Dr. Song has not even attempted to distinguished *Palka* on that point. *See* ECF No. 91 at 15-16. This is sufficient to find the requisite nexus under the second prong of the specific jurisdiction test.
>
> Dr. Song argues that but-for causation is required to establish the requisite nexus between Bluestar's claims and his California contacts. In other words, Dr. Song contends that the requisite nexus cannot be established unless Bluestar shows that its claims would not have arisen but for Dr. Song's contacts with California. The Ninth Circuit has clarified that "but for" causation is not required to establish the nexus for the second prong of the specific jurisdiction test in light of *Ford Motor Co. v. Montana Eighth Judicial District*, 141 S. Ct. 1017, 1026 (2021) ("*Ford*"). *Ford* holds that the phrase "relates to" contemplates that "some relationships will support jurisdiction without a causal showing." *See Ayla*, 11 F.4th at 983 n.5 ("We clarify [in light of *Ford*] that

6

> our precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement" of the specific jurisdiction test). Because but-for causation is not required to satisfy the second prong, Dr. Song's argument fails.
>
> In light of the foregoing, the second prong of the specific jurisdiction test is satisfied.

*Id.* at 24-26.

The Court concluded that Dr. Song did not meet his burden to show that the Court's exercise of personal jurisdiction over him would be unreasonable as required under the third prong of the specific jurisdiction test. *See id.* at 26-32.

On June 14, 2023, Dr. Song filed the present motion for certification of an interlocutory appeal under § 1292(b) with respect to the Court's order of May 25, 2023. ECF No. 105. As noted, Bluestar opposes the motion. *See* ECF No. 115.

On June 23, 2023, Dr. Song filed an answer to the FAC. ECF No. 111. On July 11, 2023, the Court held a case management conference and set a case schedule. ECF Nos. 113, 114.

## II.  JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## III.  LEGAL STANDARD

Under the final judgment rule, the courts of appeals have jurisdiction over "appeals from all final decisions of the district courts of the United States[.]" *See* 28 U.S.C. § 1291. "Thus, parties may appeal only from orders which end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (citations and internal quotation marks omitted, alternations in the original).

A "narrow exception to the final judgment rule" is embodied in 28 U.S.C. § 1292(b). *See id.* Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order [(1)] involves a controlling question of law as to which [(2)] there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Certification under § 1292(b) requires the district court to expressly find in

7

1    writing that all three § 1292(b) requirements are met." *Couch*, 611 F.3d at 633. The party seeking

2    certification under § 1292(b) bears the burden of demonstrating that all three statutory

3    prerequisites for granting certification under § 1292(b) are satisfied. *See id.* The Court of Appeals

4    that would have jurisdiction of an appeal of an order certified under § 1292(b) has discretion to

5    permit an appeal to be taken from the order. 28 U.S.C. § 1292(b).

6          "Section 1292(b) is a departure from the normal rule that only final judgments are

7    appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d

8    1064, 1068 n.6 (9th Cir. 2002). Section 1292(b) "was not intended merely to provide review of

9    difficult rulings in hard cases." *United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir.

10   1966).

11   **IV.   DISCUSSION**

12         Dr. Song moves for certification under 28 U.S.C. § 1292(b) of the Court's order of May

13   25, 2023, denying his motion to dismiss for lack of personal jurisdiction. ECF No. 105. Dr. Song

14   "disagrees with the Court's finding of purposeful availment but *does not challenge that finding* for

15   the purposes of the Motion to Certify." *Id.* at 10 n.3 (emphasis added). Instead, Dr. Song

16   challenges the Court's finding under the second prong of the specific jurisdiction test that

17   Bluestar's claims against Dr. Song arise out of or relate to Dr. Song's contacts with California.

18   Dr. Song argues that all three requirements for certification under § 1292(b) are met because (1)

19   whether personal jurisdiction can be exercised by a district court is a question of law; (2)

20   "[r]easonable jurists could differ as to whether *Ford*, *Ayla* or *Palka* provide sufficient guidance for

21   a determination of the necessary quantum of facts to support a finding of relatedness in this breach

22   of contract for services case," ECF No. 105 at 17; and (3) if the Ninth Circuit resolves that issue in

23   his favor, the litigation would terminate for lack of personal jurisdiction. Dr. Song also moves for

24   a stay of the action pending appeal.

25         Where a party seeking certification under § 1292(b) fails to "establish the requisite

26   substantial ground for difference of opinion," the district court "should not" grant the request for

27   certification. *See Couch*, 611 F.3d at 633. "To determine if a substantial ground for difference of

28   opinion exists under § 1292(b), courts must examine to what extent the controlling law is unclear."

8

*Id.* (internal quotation marks omitted). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (citation omitted). However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (internal quotation marks omitted). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.*

Here, Dr. Song has not shown that a substantial ground for difference of opinion exists under the standards just described. He contends that "[r]easonable jurists could differ as to whether *Ford*, *Ayla* or *Palka* provide sufficient guidance for a determination of the necessary quantum of facts to support a finding of relatedness in this breach of contract for services case where Bluestar has not met a 'but for' standard and . . . in short, where the contractual relationship clearly was not centered in California." ECF No. 105 at 13. He further argues that there is a "lack of clarity regarding the standard to be applied in determining relatedness now that the 'but for' requirement is no longer the exclusive test" after *Ford* and *Ayla*, *id.* at 18-19, because neither *Ford* nor *Ayla* "provided a clear standard to replace it or provided a specific means to assess the quantum of facts necessary to determine the relatedness of the plaintiff's claims to the defendant's forum-based activities," *id.* at 14.

The Court is not persuaded that reasonable jurists would differ as to whether *Ford*, *Ayla*, or *Palka* provide sufficient guidance as to how to determine whether a plaintiff's claims "arise out of or relate to" a defendant's contacts with the forum where the facts are similar to those here.

In *Ford*, the Supreme Court clarified that the "arises out of or relates to" standard requires "a 'connection' between a plaintiff's suit and a defendant's activities" and that the standard can be met if *either* a claim "arises out of" a defendant's contacts with the forum *or* the claim "relates to" the defendant's contacts with the forum. *See* 141 S. Ct. at 1026 ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will

9

1  support jurisdiction without a causal showing.") (citation omitted).  The Supreme Court applied

2  that legal standard to the facts before it and concluded that the plaintiffs' claims against the

3  defendant (Ford), which arose out of injuries caused by the alleged malfunctioning of specific

4  models of Ford vehicles, had a "strong relationship"[1] to the defendant's contacts with the forum

5  states because such contacts pertained to "the very vehicles that the plaintiffs allege malfunctioned

6  and injured them in those States."[2]  *See id.* at 1028.

7        In *Ayla*, the Ninth Circuit recognized that, in *Ford*, "the Supreme Court emphasized that a

8  strict causal relationship is not required" to satisfy the "arises out of or relates to" standard, and

9  that the standard, therefore, "permit[s] but do[es] not require a showing of but-for causation[.]"

10  *See* 11 F.4th at 983 & n.5.  The Ninth Circuit applied that standard to the facts before it and

11  concluded that the plaintiff's claims, which arose out of the defendant's alleged trademark

12  infringement, had the requisite "nexus" to the defendant's forum contacts because those contacts

13  involved the marketing and distribution of the very products that contained the mark at issue and

---

[1] Dr. Song argues that *Ford* holds that "[t]here *must be* a 'strong relationship among the defendant, the forum, and the litigation" for the "arises out of or relates to" requirement to be satisfied.  ECF No. 105 at 14 (citing *Ford*, 141 S. Ct. at 1028) (emphasis added).  That is incorrect.  The Supreme Court in *Ford* found that a "strong relationship" existed among the defendant, the forum, and the litigation based on the facts before it, but it did not hold that a "strong relationship" must be present in every case for the "arises out of or relates to" standard to be met.  When describing the type of nexus that would satisfy the "arises out of or relates to" standard, the Supreme Court referred to a "connection" or a "relationship," without any qualifiers.  *See Ford*, 141 S. Ct. at 1026 ("But Ford's causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities."); *see also id.* at 1028 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) for the proposition that the "essential foundation" of specific jurisdiction is a "relationship among the defendant, the forum, and the litigation").

[2] Dr. Song points to the Supreme Court's mention in *Ford* of the defendant's "veritable truckload of contacts with Montana and Minnesota" (the forum states) to argue that the Supreme Court's finding that the "arises out of or relates to" standard was met in that case turned on the quantity of the defendant's contacts with the forum states.  *See* ECF No. 105 at 14 ("*Ford* relied on the 'veritable truckload' of defendant's contacts with the forum states in finding relatedness").  Dr. Song misreads *Ford*.  The question of whether the defendant had sufficient contacts with the forum states was undisputed, and it was separate from the analysis of whether those contacts had the requisite connection or relationship to the plaintiffs' claims.  *See Ford*, 141 S. Ct. at 1031-32 ("Ford has a veritable truckload of contacts with Montana and Minnesota, as it admits.  *See supra*, at 1027-1028.  The only issue is whether those contacts are related enough to the plaintiffs' suits.").

10

1  that gave rise to the plaintiff's claims. *See id.* at 983.

2  In *Palka*, which was issued before *Ford* and *Ayla* and which the Court discussed in detail in its May 25, 2023 order, the Ninth Circuit held that a claim for breach of a contract for accounting services that were to be provided to a business in California by a Kansas defendant had the requisite connection to the defendant's contacts with California (the forum) because the claims arose "out of [the defendant's] alleged failure fully to perform his duties as an accountant[.]" *See* 823 F.2d at 315. As such, the Ninth Circuit held that the claims "ar[o]se directly out of [the defendant's] forum contacts with California via his employment relationship with [the California plaintiff]." *See id.* As noted above, and in the Court's order of May 25, 2023, the defendant who allegedly breached the contract by failing to perform his duties as an accountant "performed most of the accounting services while at home in Kansas but traveled to California to work in [the plaintiff's] offices for seven to ten days during each June from 1981 to 1983, and in August 1983 he returned to California to work on [the plaintiff's] tax audit." *Id.* at 312. The Ninth Circuit did not specify where the defendant allegedly failed to fully perform his duties as an accountant; accordingly, the location of the alleged breach did not appear to play a role in the Ninth Circuit's holding that the breach of contract claim arose out of the defendant's contacts with California. The Ninth Circuit's holding that the breach of contract claim is sufficiently related to the defendant's forum contacts has even more support after *Ford* and *Ayla* given that those cases clarified that the requisite connection between the plaintiff's claims and the defendant's forum contacts can be found when the plaintiff's claims merely "relate to" the defendant's forum contacts and that the claims need not "arise out of" such contacts.

*Ford*, *Ayla*, and *Palka* provide more than enough guidance as to how to determine whether the "arises out of or relates to" standard is met where the relevant facts are similar to those here.[3]

---

[3] Dr. Song argues that *Palka* does not provide "sufficient guidance for this case, notwithstanding it involved a breach of contract for services" because in *Palka* "the court specifically noted that the plaintiff's claims were based on the employer/employee relationship and on the fact that some of the claims arose directly from the defendant's presence and services performed in the forum." ECF No. 105 at 15-16. The Court is not persuaded. First, in its order of May 25, 2023, the Court rejected Dr. Song's attempt to distinguish *Palka* based on the absence of an employer/employee relationship here, *see* Order at 21-22, ECF No. 100; the Court incorporates its findings and reasoning here by reference. Second, the claim in *Palka* that arose directly out of the defendant's

11

Those cases hold that the "arises out of or relates to" standard requires a connection, relationship, or nexus between the plaintiff's claims and the defendant's contacts with the forum. That connection, relationship, or nexus is present here. Dr. Song's contacts with California, which, as noted above, Dr. Song does not "challenge" for the purpose of the present motion, include (1) his intentional assent to the Consulting Agreement, which created long-term, continuing obligations to a California resident without a definite end date (as opposed to creating a one-time transaction after which the parties would go their separate ways) and contained a California choice-of-law provision; (2) his two in-person visits to Bluestar's offices in California at Bluestar's expense in connection with the Consulting Agreement; and (3) his acceptance of all payments he received pursuant to the Consulting Agreement in a bank account he set up in California. *See* ECF No. 100 at 17-19. Those California contacts, which are related to the Consulting Agreement, have a connection, relationship, or nexus to Bluestar's claims against Dr. Song because the claims arise out of or relate to the Consulting Agreement. That satisfies the "arises out of or relates to" standard.

That Dr. Song disagrees with the Court's reasoning and analysis on this issue is not a basis for granting certification under § 1292(b).[4] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v.*

---

physical presence in the forum was his state-law claim for "money had and received"; that claim is not relevant here. *See* 823 F.2d at 315 ("[T]he 'money had and received' claim arises out of Palka's alleged overpayment of himself which allegedly occurred during June 1984 while Palka was physically present in California."). As discussed above, the claim that is relevant here is the one for breach of contract. The accounting services that formed the basis of that claim were performed by the Kansas defendant mostly outside of the forum, and it is not clear where the breach of contract occurred. *Palka* does not state that the breach of contract claim "arose directly from the defendant's presence and services performed in the forum," as Dr. Song contends.

[4] Dr. Song disagrees with the Court's reasoning and conclusions because, according to Dr. Song, the Court's May 25, 2023, order "seems to imply that the contractual relationship provides the necessary contacts which would permit the exercise of personal jurisdiction over any defendant who had entered into and breached a contract with a California resident," but "a contract with a California resident is insufficient basis for establishing personal jurisdiction." *See* ECF No. 116 at 4. Dr. Song misreads the May 25, 2023, order. The Court's conclusion that it can exercise specific personal jurisdiction over Dr. Song was not premised on the existence of the Consulting Agreement alone. *See* Order at 17, ECF No. 100 (recognizing that the "existence of a contract that will be performed by one of the parties in the forum state does not, on its own, 'automatically establish sufficient minimum contacts in the other party's home forum'") (citation omitted); *see also id*. at 18-32 (providing detailed reasoning for conclusion that the Court can exercise specific personal jurisdiction over Dr. Song).

12

*Ready Pac Foods, Inc.*, No. CV 09-3220 RSWL MANX, 2011 WL 1059284, at *4 (C.D. Cal. Mar. 18, 2011) ("[I]n ruling on motions to certify pursuant to 28 U.S.C. § 1292(b), [a] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference of opinion sufficient to satisfy Section 1292(b)'s second criteria.") (citation and internal quotation marks omitted). Dr. Song has not cited any case involving facts like those here in which a court found that the plaintiff's claims *did not* "arise out of or relate to" the defendant's forum contacts. That supports a finding that no substantial ground for difference of opinion exists. *See Couch*, 611 F.3d at 633 (holding that no substantial ground for difference of opinion existed in relevant part because "defendants have not provided a single case that conflicts with the district court's construction or application of" the statute at issue).

The cases that Dr. Song relies upon involve facts that are distinguishable from those here; for that reason, the courts in those cases reached different conclusions as to whether they could exercise specific personal jurisdiction over the defendant.[5] In the cases cited by Dr. Song that

---

[5] For example, in *Specialized Transp. & Rigging, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 3:20-CV-00188-TMB, 2022 WL 603034, at *5-*7 (D. Alaska Feb. 28, 2022), the claims were for breach of a purchase agreement and written limited warranty for a trailer. The court found that the plaintiff had not shown purposeful availment by the defendant in Alaska (the forum) because all activities related to the execution and performance of the purchase agreement had occurred in Canada; the obligations arising from the warranty were limited and could be performed in Canada; no employee of the defendant had traveled to Alaska in connection with the purchase agreement; and the purchase agreement and warranty contained Canada choice-of-law provisions. *See id.* Here, by contrast, Dr. Song agreed to a long-term Consulting Agreement that contained a California choice-of-law provision and he visited Bluestar's offices in California at Bluestar's expense twice in connection with the Consulting Agreement.

In *DocuSign, Inc. v. Clark*, No. 21-CV-04785-WHO, 2022 WL 225623, at *1 (N.D. Cal. Jan. 25, 2022), the claims were for fraudulent misrepresentation, negligent misrepresentation, and concealment and arose out of a contract for expert consulting services to be provided in litigation in Texas. The court found that the plaintiff had not shown purposeful availment by the defendant in California (the forum) in relevant part because the contract "makes no mention of California at all" and the defendant did not perform any work for the plaintiff pursuant to the agreement in California. *Id.* at *4. Here, by contrast, the Consulting Agreement has a California choice-of-law provision and Dr. Song visited Bluestar's offices in California twice in connection with the Consultant Agreement.

In *CPV Prods., Inc. v. Drum Omg Ldt.*, No. 222CV01349ABKSX, 2022 WL 18280211, at *6 (C.D. Cal. Dec. 14, 2022), the claims arose out of the breach of an implied-in-fact contract. The court declined to exercise specific personal jurisdiction over the defendant on the ground that the defendant's contacts with California (the forum) were not sufficient to find purposeful availment because most of the parties' communications relating to the alleged contract were conducted while the defendant was outside of California and, "[c]ritically, no version of either the implied contract or the contemplated express contract would have created the type of long-term, continuous

13

actually address the issue of whether the "arises out of or relates to" requirement was met, the courts required a showing of a nexus or connection between the plaintiff's claims and the defendant's forum contacts, consistent with *Ford* and *Ayla*.[6]  There is no indication in those cases

---

obligations that supported specific jurisdiction" in other cases.  *Id.* at *6 (citation omitted).  Here, by contrast, purposeful availment by Dr. Song exists in part because Dr. Song assented to the Consulting Agreement (which was fully executed and was not merely implied) and that contract created long-term, continuous obligations to a California resident without a definite end date and contained a California choice-of-law provision.

[6] In *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 501 (9th Cir. 2023), the plaintiff asserted product-liability claims related to the design, manufacture, and distribution of a specific type of battery.  The Ninth Circuit held that the "arises out of or relates to" requirement under *Ford* was not met because the plaintiff did not show that its claims had a connection to the only contacts that the defendants had with Hawaii (the forum); those contacts did not involve the batteries at issue in the action.  The defendants' forum contacts were the use of a port in the forum to ship things other than the battery at issue, and the sale of products in the forum other than the battery at issue.

In *CZ Servs., Inc. v. Anthem Ins. Companies, Inc.*, No. 19-CV-04453-JD, 2022 WL 4126281, at *2 (N.D. Cal. Sept. 9, 2022), the claims arose out of the termination of a contract by an entity that was not a party in the action.  The court found that the "arises out of or relates to" requirement was not met under *Ford* because the plaintiff had not shown that its claims had any connection to the defendants' contacts with California (the forum), which involved the marketing and provision of insurance.  The court held that the requisite connection between the plaintiff's claims and the defendants' forum contacts could not be inferred on the basis that the entity whose conduct gave rise to the plaintiff's claims was an agent of the defendants because the plaintiff had not shown that the defendants exercised control over that entity in connection with the conduct that gave rise to the plaintiff's claims.  *See id.*

In *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022), the claims were for negligence, strict products liability, and breach of warranty, and arose out of injuries caused by an aircraft that crashed.  The Ninth Circuit held that the plaintiff had not shown that the "arises out of or relates to" requirement was met under *Ford* because it did not show that its claims had any connection to the defendants' single contact with Arizona (the forum), which was a service center.  The Ninth Circuit reasoned: "There is no allegation in this case that Textron's single Arizona service center ever serviced Plaintiffs' aircraft, nor is there any indication that this service center even services the same type of Columbia aircraft at issue in this case."  *See id.*

In *Brown v. Serv. Grp. of Am., Inc.*, No. 3:20-CV-02205-IM, 2022 WL 43880, at *4 (D. Or. Jan. 5, 2022), *aff'd*, No. 22-35107, 2022 WL 16958933 (9th Cir. Nov. 16, 2022), the plaintiff asserted claims against his employer's holding company arising out of injuries he suffered as a result of his employer's alleged failure to provide him with adequate protective equipment.  On appeal, the Ninth Circuit held that the plaintiff had not shown that the "arises out of or relates to" requirement was met under *Ayla* and *Ford* because he did not show that the holding company had any connection to the protective equipment that gave rise to his alleged injuries.  The Ninth Circuit held that the requisite connection could not be inferred on the basis that the holding company owned the plaintiff's employer and conducted basic corporate supervision of it.

In *Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No. 22-CV-01559-LB, 2023 WL 105096, at *11 (N.D. Cal. Jan. 4, 2023), the claims arose out of the alleged harassment committed by coaches against student-athletes at a school in California (the forum).  The court found that the "arises out of or relates to" requirement was not met under *Ford* because the plaintiffs had not shown that defendant National Collegiate Athletic Association ("NCAA") had any contacts with the forum that had a connection to their claims.  The court held that the alleged actions of the coaches in the

of a "lack of clarity" as how the "arises out of or relates to" standard should be applied, as Dr. Song contends. The variance in the outcomes in those cases is the result of the application of unambiguous legal standards to different factual scenarios. That variance, therefore, does not establish that a substantial ground for difference of opinion exists. *See Couch*, 611 F.3d at 633 ("That settled law might be applied differently does not establish a substantial ground for difference of opinion.").

Dr. Song also argues that "the law on relatedness" is not well-settled because two opinions (one from the First Circuit and one from the Second Circuit) employed different tests for determining "relatedness." ECF No. 116 at 5. The Court is not persuaded that those two opinions indicate that the "arises out of or relates to" standard is unclear or not well-settled.[7]

Finally, Dr. Song argues that a substantial ground for difference of opinion can exist where reasonable jurists "might disagree" on an issue's resolution, not merely where they have already disagreed. ECF No. 105 at 13 (citing *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). *Reese* holds that a substantial ground for difference of opinion can exist where "novel legal issues are presented" and "fair-minded jurists might reach contradictory conclusions." *See* 643 F.3d at 688 ("Stated another way, when novel legal issues are presented, on which fair-

---

forum were not forum contacts by the NCAA, and that the NCAA's alleged management of student athletics throughout the country was not related to the litigation.

[7] In *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258-59 (1st Cir. 2022), the First Circuit relied on a circuit precedent that pre-dates *Ford* in evaluating whether the plaintiff's claim for breach of contract arose out of or was related to the defendant's forum contacts. *See id.* ("For breach of contract claims, 'we ask whether the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'") (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)). The First Circuit's reliance on an old precedent in this particular opinion does not indicate that *Ford* does not provide sufficient guidance or that "the law on relatedness" is unclear.

In *Suber v. VVP Servs., LLC*, No. 21-2649, 2023 WL 115631, at *3 (2d Cir. Jan. 10, 2023), the Second Circuit examined whether a New York court could exercise personal jurisdiction over several defendants pursuant to New York's long-arm statute based on the language of the statute and related New York state court precedents. The Second Circuit did not reach the question of "whether asserting personal jurisdiction over Defendants would comport with due process" under the United States Constitution. *See id.* n.2. *Suber* does not indicate that *Ford* does not provide sufficient guidance, because *Suber* did not address personal jurisdiction in the context of federal due process requirements, which is what was at issue in *Ford* (and is at issue here given the range of California's long-arm statute).

15

1 minded jurists might reach contradictory conclusions, a novel issue may be certified for
2 interlocutory appeal without first awaiting development of contradictory precedent."). No novel
3 legal issue is presented here.
4     In sum, Dr. Song has not shown that there is a substantial ground for difference of opinion
5 with respect to the issue he moves to certify for interlocutory appeal. Because at least one of the
6 three requirements for certification under § 1292(b) is not met, certification cannot be granted.
7 *See Couch*, 611 F.3d at 633. The Court therefore denies Dr. Song's motion for certification under
8 § 1292(b) and also denies his motion to stay.

## CONCLUSION

10     For the foregoing reasons, the Court denies Dr. Song's motion for certification under 28
11 U.S.C. § 1292(b), as well as his motion to stay.
12 **IT IS SO ORDERED.**
13 Dated: January 4, 2024



JON S. TIGAR
United States District Judge

16