UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUESTAR GENOMICS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CHUNXIAO SONG, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-04507-JST   (LJC)<br><br>**ORDER RE: JOINT DISCOVERY LETTER**<br><br>Re: ECF No. 150 |

Pending before the Court is the parties' Joint Discovery Letter, in which Plaintiff Bluestar Genomics (Bluestar) requests that the Court compel Defendant Dr. Chuxiao Song to produce documents responsive to Requests for Production (RFP) Nos. 5, 7, 8, 13, 17–32, 37–41. ECF No. 150. The parties' primary dispute is whether Dr. Song has "possession, custody, or control" over these documents. The Court held a hearing on April 23, 2024. ECF No. 156. For the reasons explained below, the Court finds that Dr. Song does not have "possession, custody, or control," and hereby **DENIES** Bluestar's request to compel.

I.   **BACKGROUND**

The factual and procedural background of this case is thoroughly detailed in Judge Tigar's Order Granting in Part and Denying in Part Defendants' Motions to Dismiss. *See* ECF No. 100 at 2–14.[1] That background is fully incorporated by reference into this Order. In summary, the claims in this action arise out of the alleged breach of a consulting services agreement between Bluestar and Dr. Song. The agreement was executed in 2016, several months after Dr. Song became employed at the University of Oxford (Oxford) in a branch funded by the Ludwig Institute

---

[1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system.

for Cancer Research Ltd. (Ludwig), Dr. Song's former co-defendant. While at Oxford, Dr. Song allegedly developed two technologies used to detect cancer, the 5mC and TAPS technologies, and assigned the rights and interest to them to Ludwig instead of Bluestar, in contravention of the parties' consulting services agreement.

Relevant to the instant discovery dispute, Bluestar served its First Set of RFPs to Dr. Song on October 23, 2023. *See* ECF No. 150-1. The RFPs seek documents relevant to the assignment and licensing of the 5mc and TAPS technologies, as well as the transactions, valuations, research, and design of these technologies. *Id.* Under Rule 34 of the Federal Rules of Civil Procedure, Dr. Song's responses and objections to the RFPs were due on November 22, 2023, thirty days from the date the RFPs were served. Dr. Song did not provide any responses or objections by this deadline. Bluestar claims that it had "conversations" with Dr. Song by telephone about his failure to serve RFP responses (ECF No. 150 at 2), but it does not submit any evidence (e.g., a sworn declaration) indicating when these conversations occurred or what was discussed during these conversations.

On December 6, 2023, Dr. Song emailed Bluestar noting that he expected to serve his RFP responses and objections within "the next week." ECF No. 150-6 at 5. Bluestar did not reject or agree to Dr. Song's proposed timeframe for service of his RFP responses or otherwise acknowledge receipt of the email. Dr. Song, however, failed to serve any responses or objections in December 2023. On January 16, 2024, Bluestar emailed Dr. Song to ask for a status update and cautioned him that the "period to object" to its First Set of RFPs had "lapsed." *Id.* at 4. Dr. Song responded the next day, January 17, 2024, and disagreed with Bluestar that the period to object had passed. *Id.* at 3. He told Bluestar that he expected to serve his responses by the end of the week or the beginning of the following week. *Id.*

Also in that same email, Dr. Song indicated that his counsel had needed to communicate with Oxford and Ludwig on the production of certain responsive documents. *Id.* It is undisputed that Dr. Song used his Oxford email account for communications related to the subject matter of this litigation. *See* ECF No. 150 at 2–3. He also stored pertinent files on Oxford's computer system, including files related to consulting services he provided to Bluestar, which is completely

2

unrelated to his work at Oxford. *Id.*

Oxford's IT regulations state in relevant part, "The University provides computer facilities and access to its computer networks only for purposes directly connected with the work of the University." ECF No. 150-4, § 2(1). "Users shall treat as confidential any information which may become available to them through the use of such facilities and which is not clearly intended for unrestricted dissemination; such information shall not be copied, modified, disseminated, or used either in whole or in part without the permission of the individual or body entitled to give it." *Id.* § 9. The regulations go on to provide that "[i]f a user is thought to be in breach of any of the University's statutes or regulations, including these regulations, he or she shall be reported to the appropriate officer who may recommend to the appropriate university or college authority that proceedings be instituted under either or both of university and college disciplinary procedures." *Id.* § 15(1). Also relevant is Dr. Song's employment contract. *See* ECF No. 31-1. The contract states that "[a]ny matter of a confidential nature, including information, but not limited to, relating to the diagnosis and treatment of patients, individual staff records, and details of contract prices and terms must under no circumstances be divulged to any unauthorized person or persons. Disciplinary action will be taken for any breach of confidentiality." *Id.* at 30.

In connection with jurisdictional discovery conducted for the parties' motion to dismiss briefing, Dr. Song produced over 700 pages of emails obtained from the Oxford system, nearly 200 pages of Oxford internal policies and agreements, over 700 pages of Oxford research presentations, and over 400 pages of Oxford internal patent prosecution documents. ECF No. 150 at 2–3. He most recently produced documents from Oxford on March 12, 2024. *See* ECF No. 150-7. Dr. Song contends that he did not previously produce these documents because they were "not relevant" to jurisdictional discovery, but he was now producing them because they are responsive to Bluestar's RFPs and "relevant to the ongoing litigation." *Id.*

On January 16, 2024, Dr. Song asked Oxford if it believed that Oxford should have a representative participate in "the mediation" in this case.[2] ECF No. 150-5 at 2. Counsel for

---

[2] On November 22, 2023, the Court referred the case to court-sponsored mediation. ECF No. 133. A Mediation session was held on February 20, 2024, and the case did not settle. ECF No. 146.

Oxford responded the next day, January 17, 2024, and referenced the RFPs, informing Dr. Song that "[i]n relation to the discovery requests made of your client, documents that Dr Song has access to in his capacity as a University employee: (i) unless established otherwise, will belong to the University; (ii) may contain information confidential to the University and/or information subject to privilege; and as a result (iii) can only be produced by the University, or otherwise with its consent (which consent, for the avoidance of doubt, has not been provided either to your firm or to your client)." *Id.*

Dr. Song eventually served his responses and objections to Bluestar's First Set of RFPs on January 19, 2024, three days after Bluestar emailed him asking for a status update. *See* ECF No. 150-2.

## II. DISCUSSION

### A. Rule 34 Waiver

Bluestar argues, as a threshold matter, that Dr. Song waived his objections to the First Set of RFPs by failing to timely respond. ECF No. 150 at 2. The RFPs were served on October 23, 2023, and Dr. Song did not serve his responses and objections until January 19, 2024, approximately two months after the deadline had passed. *Id.*

#### 1. Legal Standard

Unless otherwise agreed, a party must serve their responses and any objections to RFPs promulgated during discovery within thirty days after their service. Fed. R. Civ. P. 34(b)(2)(A). Generally, "a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Notably, Rule 33, which also provides a thirty-day timeframe for a party to serve their answers and any objections to interrogatories (Fed. R. Civ. P. 33(b)(2)), allows courts to excuse a party's failure to timely assert objections "for good cause." Fed. R. Civ. P. 33(b)(4). Rule 34 does not contain an analogous "good cause" exception. However, the Ninth Circuit has been reluctant to interpret Rule 34 as imposing an automatic waiver penalty for untimely discovery responses. *Cf. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a "per se waiver rule that deems a privilege waived if a

4

privilege log is not produced within Rule 34's 30-day time limit.").

Many courts believe that "there is no reason to treat waiver under Rule 34 any different than Rule 33." *Apple Hill Growers v. El Dorado Orchards, Inc.*, No. 217CV02085TLNCKD, 2022 WL 1506205, at *12 (E.D. Cal. May 12, 2022) (quoting *Ocean Garden Prod. Inc. v. Blessings Inc.*, 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020)). "[C]ourts 'retain discretion to relieve a late or non-responding party from the potentially harsh consequences associated with waiver.'" *Id.* (quoting *Liguori v. Hansen*, 2012 WL 760747, at *11 (D. Nev. Mar. 6, 2012)); *see also Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C-13-05881 LB, 2015 WL 848554, at *1 (N.D. Cal. Jan. 28, 2015) (considering whether to excuse plaintiffs' untimely response to defendants' requests for production, but finding that the record did not support relieving them of their waiver of their right to object). "In determining whether a party has shown good cause, a court should evaluate relevant factors, including: (1) the length of the delay; (2) the reason for the delay; (3) the existence of bad faith; (4) the prejudice to the party seeking the disclosure; (5) the nature of the request; and (6) the harshness of imposing the waiver." *Lam v. City & Cnty. of San Francisco*, No. 410CV04641PJHLB, 2015 WL 4498747, at *3 (N.D. Cal. July 23, 2015) (applying the "good cause" standard in the context of Rule 33 interrogatories).

### 2. Analysis

The Court will exercise its discretion and not impose an automatic waver penalty for Dr. Song's untimely RFP responses and objections. Instead, the Court will apply *Lam*'s six-factor balancing test and consider whether Dr. Song has shown "good cause" for his delay in responding to Bluestar's First Set of RFPs.

#### a. Length of the Delay

It is undisputed that Dr. Song did not serve his responses and objections to Bluestar's First Set of RFPs until January 19, 2024, almost two months after his responses were originally due under Rule 34. This is a significant amount of time, and thus, this factor weighs in favor of Bluestar.

#### b. Reason for the Delay

According to Dr. Song, responding to Bluestar's RFPs was "extremely time-consuming" in

5

part because of the need to obtain Oxford's consent to the production of responsive documents, as the documents are stored on Oxford's computer system. ECF No. 150 at 6. He claims that Ludwig initially promised to assist him with this process, but "ultimately and unexpectedly declined to do so." *Id.* Dr. Song then had to reach out to Oxford directly, who ultimately refused to provide its consent. *See* ECF No. 150-5 at 2. Regardless of whether Dr. Song does or does not actually need Oxford's consent to produce the requested documents, it was undoubtedly reasonable for him to investigate the issue first before responding to Bluestar's First Set of RFPs. It is undisputed that relevant documents are located on Oxford's system and that Dr. Song would need to access that system to be able to produce them in this litigation. It is also reasonable to assume that this investigation involved communications with Ludwig, Dr. Song's former co-defendant, especially given Ludwig's working relationship with Oxford. *See* SAC ¶ 23; ECF No. 31-1 at 2. As such, this factor weighs in favor of Dr. Song

### c. Existence of Bad Faith

Bluestar argues that, even if the delay is attributable to "supposed coordination with Ludwig and Oxford," this does not explain Dr. Song's failure to serve written responses or to seek an extension within Rule 34's 30-day timeframe. ECF No. 150 at 2. Moreover, the supposed "coordination" ultimately resulted in nothing but Dr. Song refusing to produce any documents and "demanding" instead that Bluestar seek the documents from Oxford via a Hague Convention discovery request. *Id.* Dr. Song does not dispute the fact that he did not respond to the RFPs or ask for an extension before Rule 34's thirty-day deadline had passed. Dr. Song also does not dispute the fact that he informed Bluestar on December 6, 2023 that he expected to serve his RFP responses and objections in "the next week," yet he failed to serve anything until more than a month later. ECF No. 150-6 at 5.

Despite this clear misstep, Dr. Song contends that "[t]here was no bad faith and no attempt to obstruct discovery." ECF No. 150 at 6. According to him, the delay is attributable only to the need for Dr. Song to communicate with Ludwig and Oxford on the issue of producing documents from Oxford's computer system. *Id.* There is no evidence before the Court to suggest that Dr. Song was actually acting in bad faith. At the hearing, Bluestar pointed to Dr. Song's "course of

6

conduct" during this litigation and relied on it as evidence of bad faith. Bluestar emphasized how Dr. Song entered into the Stipulated Protective Order "in this case knowing he maintained his documents on the Oxford server and that production of such documents would be at the heart of the case." ECF No. 150 at 4. But stipulated protective orders are par for the course in civil litigation and the fact that he stipulated to the Protective Order here does not in and of itself establish bad faith.

Bluestar also argued that Dr. Song acted in bad faith by producing records from Oxford's computer system during an earlier stage of the litigation when jurisdictional discovery was being conducted and then objecting to producing documents of Oxford's in response to Bluestar's First Set of RFPs supposedly because he lacks "possession, custody or control" over them. As further detailed below (*see infra* Section B.2), Dr. Song previously produced Oxford's documents believing that Ludwig had obtained Oxford's consent for them to be produced in this litigation. Whether Oxford did or did not actually consent, Dr. Song subjectively believed Oxford had agreed to the documents being produced, and this does not evidence bad faith in conducting discovery, especially given Ludwig's involvement as Dr. Song's co-defendant earlier in the case. Ultimately, this factor also weighs in favor of Dr. Song.

### d.     Prejudice to the Party Seeking the Disclosure

As noted above, Bluestar submitted no evidence with respect to the "conversations" its counsel purportedly had with defense counsel in those two months prior to January 16, 2024, when Bluestar emailed Dr. Song asking about his RFP responses and asserting its position that the period to object had "lapsed" (ECF No. 150-6 at 4). Dr. Song claims that no such "conversations" ever occurred. ECF No. 150 at 6. The Court asked about the parties' communications as to Dr. Song's RFP responses at the hearing, but Bluestar drew the Court's attention only to the existing record. The record shows that Bluestar inquired about Dr. Song's RFP responses only once, on January 16, 2024, fifty-five days after Rule 34's thirty-day deadline had passed. ECF No. 150-6 at 4.

Thus, Bluestar's contention that it was prejudiced by the two-month delay is belied by the fact that it seemingly did not pressure Dr. Song on his RFP responses during those two months.

7

When Dr. Song told Bluestar that he expected to serve his RFP responses on or around December 13, 2024 (*see* ECF No. 150-6 at 5), Bluestar did not respond (even after December 13, 2024 passed) until more than a month later. *See id.* at 4. This is despite the fact that the substantial completion deadline in this case, May 12, 2024, was less than six months away. *See* ECF No. 129. This factor weighs in favor of Dr. Song.

### e. Nature of the Request

Bluestar served forty-one RFPs on Dr. Song, most of which request documents as to the 5mc and TAPS technologies (the two disputed technologies at issue), more specifically, as to the assignment, licensing, transactions, valuations, research, and design of these technologies. *See generally* ECF No. 150-1. Given the complex subject matter of this litigation, and the number of RFPs served by Bluestar, it is reasonable to expect that responding to the discovery requests at issue here would require more than the thirty-day timeframe provided in Rule 34. Thus, this factor weighs in favor of Dr. Song.

### f. Harshness of Imposing Waiver

A finding that Dr. Song waived his objections to Bluestar's RFPs could lead to potentially harsh consequences for him. Imposing an automatic waiver means that the Court would not reach the merits of Dr. Song's "possession, custody, or control" objection. In this case, Dr. Song would need to produce documents stored on Oxford's computer system, even though Oxford has explicitly informed him that he does not have its permission to produce such documents. This opens him up to possible sanctions by Oxford, his employer. This final factor also weighs in favor of Dr. Song.

Accordingly, given all the above, the Court finds that good cause exists to excuse Dr. Song's two-month delay in responding to Bluestar's First Set of RFPs.

### B. Possession, Custody, or Control

Bluestar challenges Dr. Song's objection that documents responsive to RFP Nos. 5, 7, 8, 13, 17–32, 37–41 are not in his "possession, custody, or control" because they are stored on Oxford's computer system. ECF No. 150 at 5. Dr. Song, for his part, argues that he "has no legal right to demand or take Oxford's documents for non-employment purposes without Oxford's

8

consent." *Id.*

### 1. Legal Standard

Rule 34 only requires production of relevant documents that "are in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." *Goolsby v. Cnty. of San Diego*, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original)).

"Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Like the majority of circuits, the Ninth Circuit has refused "to define 'control' in a manner that focuses on the party's practical ability to obtain the requested documents." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999). "Documents are not discoverable under Rule 34 if the entity that holds them 'could legally—and without breaching any contract—continue to refuse to turn over such documents.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *3 (N.D. Cal. Dec. 10, 2015) (quoting *In re Citric Acid*, 191 F.3d at 1107–08).

In applying the legal control test, "[d]ecisions from within this circuit have noted the importance of a legal right to access documents created by statute, affiliation or employment." *uSens, Inc. v. Shi*, No. 18-CV-01959-SVK, 2019 WL 13201984, at *2 (N.D. Cal. Apr. 24, 2019) (quoting *In re Legato Sys., Inc. Sec. Litig.*, 204 F.R.D. 167, 170 (N.D. Cal. 2001)). "Central to each case is the relationship between the party and the person or entity having actual possession of the document." *Thomas v. Hickman*, No. 106-CV-00215-AWI-SMS, 2007 WL 4302974, at *14 (E.D. Cal. Dec. 6, 2007). "The requisite relationship is one where a party can order the person or entity in actual possession of the documents to release them." *Id.* "The party seeking production of the documents…bears the burden of proving that the opposing party has…control" over the requested documents. *Int'l Union*, 870 F.2d at 1452.

### 2. Analysis

Bluestar contends that, based on Dr. Song's prior document productions earlier in the litigation, Dr. Song has a legal right to obtain and produce documents from the Oxford computer system and is therefore in possession, custody, or control of such documents. ECF No. 150 at 2–3. Dr. Song argues that he has no legal right to obtain documents of Oxford's because he is prohibited from doing so by his employment contract and Oxford's IT regulations.[3] ECF No. 150 at 5. Bluestar makes no argument as to whether the terms of Dr. Song's employment with Oxford legally prevent him from logging into the Oxford system to retrieve responsive emails and files for production in this litigation. The Court finds, having reviewed Dr. Song's employment contract, Oxford's IT regulations, and Oxford's January 16–17, 2024 email correspondence with Dr. Song, that Dr. Song lacks control, namely, a legal right to produce in this litigation all responsive documents from the Oxford computer system which he has access to. Oxford, as Dr. Song's employer, has notified him that documents he can access in his capacity as an Oxford employee: (1) "unless established otherwise, will belong to the University"; (2) may contain information confidential to Oxford and/or information subject to privilege; and (3) as a result, can only be produced by Oxford, or otherwise with its consent. ECF No. 150-5 at 2. Oxford also unequivocally informed him that it does not consent to the production of these documents by Dr. Song in relation to the RFPs at issue here. *Id.* Based on Oxford's position, the Court rejects Bluestar's blanket assertion that Dr. Song controls and must produce all responsive documents from Oxford's computer system which he has access to as an Oxford employee.

Dr. Song does not dispute the fact that he has previously produced documents of Oxford's in this litigation, specifically in connection with jurisdictional discovery. He claims, however, that he did so while Ludwig was still a co-defendant, and that Ludwig represented to him that it had obtained permission to produce the documents from Oxford. *Id.* at 5. According to Dr. Song,

---

[3] At the hearing, Bluestar claimed that Dr. Song represented in the Joint Discovery Letter that he is not objecting to producing documents stored on Oxford's system relating to his consulting agreement with Bluestar. This is false. Dr. Song says only that he "has not objected to producing documents related to his Consulting Agreement with Bluestar." ECF No. 150 at 5. At no point does Dr. Song indicate that this includes documents stored on Oxford's system.

10

once it was dismissed from the case, Ludwig declined to assist him in obtaining Oxford's consent in connection with responding to Bluestar's First Set of RFPs. When Dr. Song contacted Oxford directly, Oxford declined to give its consent. ECF No. 150-5 at 2. Bluestar, for its part, notes that Dr. Song has provided no support that any of this took place with respect to Ludwig and Oxford and argues that Dr. Song has provided "no good explanation for why Oxford would permit the production of documents in connection with Song's motion [to dismiss] but not on the merits of the case." ECF No. 150 at 3.

The Court need not determine whether Dr. Song did or did not have Oxford's consent to produce documents obtained from its computer system during jurisdictional discovery. Prior production by Dr. Song of these documents is not dispositive of the question before the Court— does Dr. Song have the "legal right" *now* to obtain documents from Oxford "upon demand?" *Int'l Union*, 870 F.2d at 1452; *see SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2023 WL 3344638, at *28 (D. Ariz. May 10, 2023) ("[T]he fact that SiteLock was previously able to obtain documents from [SiteLock's parent company] does not establish that it has the legal right to obtain other documents.") If Dr. Song previously produced Oxford's documents without its consent, then how Oxford responds is up to the University, but that does not mean that Bluestar can force him to do so again.

If Oxford did consent, the record shows that it is now withdrawing that consent, and Bluestar has cited to no authority indicating that Oxford is legally prevented from doing so. Nor is it relevant that Dr. Song produced documents of Oxford's on March 11, 2024 (*see* ECF No. 150-7), months after he asserted a "possession, custody, or control" objection in response to Bluestar's First Set of RFPs. Dr. Song made clear when he produced these documents that he originally obtained them during jurisdictional discovery, and he believed (whether rightly or wrongly) at that time that Oxford consented to their production. *Id.*

Bluestar cites to *Allen v. Woodford*, No. CVF051104OWWLJO, 2007 WL 309945 (E.D. Cal. Jan. 30, 2007), which granted the plaintiff's motion to compel because the individual defendants "already produced documents" like the documents requested and they "would seem to be within the possession, custody or control of the individual defendants in their employment

relationship." *Id.* at *3. However, in *Allen*, five of the six individual defendants were high-level California Department of Corrections and Rehabilitation (CDCR) officials, including Jeanne Woodford, then the Director of CDCR, and the Warden of the prison where the plaintiff was incarcerated. 2007 WL 309945, at *1. Dr. Song notes that he is merely an employee at Oxford, not an officer or director with ultimate decision-making authority. ECF No. 150 at 5. Bluestar has offered no evidence to the contrary.

Moreover, by virtue of their employment with CDCR, the individual defendants in *Allen* were represented by the California Attorney General's Office. "It is this Court's experience that individual defendants who are employed by CDCR and/or the Attorney General can generally obtain documents, such as the ones at issue here, from CDCR by requesting them." *Mundo v. Carmona*, No. 116CV01687AWIMJSPC, 2018 WL 1083889, at *2 (E.D. Cal. Feb. 28, 2018) (finding that the defendant had "constructive control over the requested documents" based on the "specific facts" of that case). There is nothing before the Court which indicates that Oxford is also known to provide employees who are parties to litigation in their individual capacities with University documents. Finally, Bluestar fails to mention that the magistrate judge's order in *Allen* was subsequently modified on reconsideration by the district judge. *See Allen v. Woodford*, No. 1:05-CV-1104 OWW NEW, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007). The district judge modified the order to require that the individual defendants "provide, if they themselves are not the custodians, the information as to who has custody, possession and control of the requested documents." *Id.* at *3. Thus, the *Allen* court never definitively established that the individual defendants, as CDCR employees, had "possession, custody, or control" over CDCR documents.

Bluestar also cites to *uSens, Inc. v. Shi*, which held that "courts regularly compel parties to produce relevant corporate documents in their possession, custody and control as employees of a third-party." 2019 WL 13201984, at *2. But *uSens* involved the CEO of the company whose documents were being sought, and at his deposition, the CEO admitted that he "possessed" the company's financial records. *Id.* "Such admissions, along with Shi's employment as the CEO…are sufficient to meet uSens's burden of demonstrating control under Rule 34." *Id.* Bluestar has presented no evidence indicating that Dr. Song has made similar admissions in this

case. Moreover, *uSens* cited to *Allen*, which as noted above is distinguishable to the instant dispute, and *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006), a case from the Second Circuit, which deems a party to have "control" over documents if the party has the "legal right or practical ability" to obtain the documents. *Id.* at 180. As noted above, the Ninth Circuit has explicitly rejected any "practical ability" test for "control." *See In re Citric Acid*, 191 F.3d at 1107–08. In addition, the producing party in *In re Flag Telecom Holdings* was a "senior executive" of the company whose records were being sought, and the company itself was a former party to the litigation. 236 F.R.D. at 181. Oxford has never been a party to this case, and Dr. Song is not an executive or an official of high authority at Oxford.

Dr. Song, for his part, relies on *SiteLock*, which involved a parent company, Innovative Business Services, LLC (IBS), and its subsidiary, SiteLock, the producing party. 2023 WL 3344638, at *1. SiteLock argued that the fact it had previously produced documents labeled "IBS" was "unremarkable" because "parties frequently receive documents from non-parties in the ordinary course of business and later produce those documents in litigation." *Id.* at *27. The court found that GoDaddy, the requesting party, had not proved that SiteLock had the legal right to obtain the documents at issue. *Id.* at *28. Moreover, counsel for the corporate entity that at the time possessed the IBS documents informed SiteLock that it would "not voluntarily furnish the requested documents" and GoDaddy had "not provided any evidence that SiteLock ha[d] legal recourse to challenge" the decision. *Id.* Here, Bluestar has likewise failed to show how Dr. Song could produce Oxford's documents despite the evidence in the record establishing that Oxford has not granted its consent.

Bluestar attempts to distinguish *SiteLock* by arguing that SiteLock involved "a request for third party documents rather than production from its own possession." ECF No. 150 at 3. Bluestar suggests (but never explicitly argues) in the Joint Discovery Letter that Dr. Song has "possession" over Oxford's documents. ECF No. 150 at 3 (citing *Thomas*, 2007 WL 4302974, at *13 ("A party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative.")). At the hearing, Bluestar confirmed its position that Dr. Song has possession over responsive documents

located on Oxford's computer system in part because he has already produced documents of Oxford's during jurisdictional discovery.

As explained above, the fact that Dr. Song previously produced documents from Oxford's system does not demonstrate that he has the legal right to obtain documents from Oxford upon demand. *See SiteLock*, 2023 WL 3344638, at *28 (D. Ariz. May 10, 2023). And the fact that Dr. Song can log into his Oxford account and download emails and files does not necessarily mean that he has "possession" over the documents. Bluestar does not cite to any legal authority finding that an employee "possesses" his work emails or documents for purposes of Rule 34 production. It is true that some courts have found employees to have "control" over their employers' documents especially when the employees were permitted to utilize the documents over the course of their employment. *See, e.g., In re Flag Telecom Holdings.*, 236 F.R.D. at 181. But most courts that have done so have relied on the "practical ability" test for determining "control," which as noted above, the Ninth Circuit has refused to adopt in this circuit. *See In re Citric Acid*, 191 F.3d at 1107–08.

Notably, the court in *Thomas* ultimately held that the defendants, who were staff physicians employed by CDCR, did not have possession, custody or control of the documents at issue because they were "not in a position with job duties or authority such that it may be reasonably concluded that their employment relationship would give rise to their actual possession, custody, or control, or the legal right to obtain control of" the documents. 2007 WL 4302974, at *14–15. Unlike the CDCR defendants in *Allen*, the defendants "could only access hard copies of an inmate's medical records upon request, solely for the purpose of treating an inmate, and not for any other purpose." *Id.* As noted above, Bluestar has failed to present any evidence to rebut Dr. Song's contention that he is an employee with no decision-making authority, who, pursuant to Oxford's IT regulations, can only access Oxford's computer system "for purposes directly connected with the work of the University." ECF No. 150-4, § 2(1).

Accordingly, the Court upholds Dr. Song's objection and finds that he does not have "possession, custody, or control" over documents responsive to RFP Nos. 5, 7, 8, 13, 17–32, 37–41 to the extent they are located on and must be produced from Oxford's computer system.

14

Bluestar has failed to bear its burden of demonstrating that Dr. Song has "control" over such documents.

### C. Confidentiality

Bluestar also challenges Dr. Song's objection that, even if the responsive documents at issue are held to be in his "possession, custody, or control," they are "subject to an obligation of confidentiality or non-disclosure" to Oxford and would "require Dr. Song to disclose information in violation of a legal obligation or contractual obligation of confidentiality or nondisclosure." *See* ECF No. 150-2.  Because the Court has found that the requested documents are not in Dr. Song's "possession, custody, or control," this objection is moot.

### III. CONCLUSION

For the foregoing reasons, Bluestar's request to compel is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: May 7, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge